UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **EDUARDO DE LA GARZA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. H-04-1844** |
| **JOHN E. POTTER, Postmaster General,,** | § | |
| **United States Postal Service,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's motion for summary judgment.  After reviewing the parties' filings and the applicable law, the Court finds that the motion, Docket No. 21, should be and hereby is **GRANTED**.  Plaintiff's race, gender, and reprisal discrimination claims are hereby **DISMISSED WITH PREJUDICE**.  Plaintiff's disability discrimination and harassment claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**I.    BACKGROUND**

Plaintiff, a Hispanic male, was employed by the United States Postal Service (USPS) as a mail handler.  In 1987, Plaintiff suffered an on-the-job injury when he fell from the top of a container from which he was unloading mail.  In 1989, Plaintiff was again injured on the job when three pallets of mail fell from the back of a truck, pinning him to the ground for approximately one hour.  In 1991, Plaintiff was injured for a third and final time, experiencing back and buttock pain and weakness in his left leg after unloading 75-pound sacks of mail for seven hours.

In September 1997, Dr. Carlos Gonzales, Plaintiff's personal physician, diagnosed Plaintiff with various spinal ailments, including spondylosis (a vertebral stress fracture) and Grade I spondylolisthesis (spondylosis that causes vertebrae to shift out of place, sometimes requiring surgery).  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Am. Ex. A, at 1.)  In 2000, Dr. Gonzales prepared a USPS Form CA 17 for Plaintiff.  On this form, Dr. Gonzales stated that Plaintiff could not lift more than 20 pounds at a time, could not perform repeated bending or stooping, could not stand or walk for prolonged periods of time, and could not drive.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. C, at 2.)  In response, the Postal Service reclassified Plaintiff as a limited duty mail handler. With this classification, Plaintiff could not be required to lift more than ten pounds at a time, lift any weight for more than four hours per day, stand or walk for more than two hours per day, reach above his shoulder, push, pull, climb, squat, kneel, or drive.  (*See* Def.'s Mot. for Summ. J., Ex. 3, at 1.)

In September 2000, the USPS Injury Compensation Office for the Houston District received a routing slip on which was written, in reference to Plaintiff, "We've had a threat assmt mtg on him once – he has had multiple injuries we should have fired him 2 yrs ago but McGilbert blew it."  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. D, at 1.)  The slip was signed with two initials, the letter "C" and an illegible second letter.  (*See id.*)

On May 22, 2003, Plaintiff completed a Report of Hazard, Unsafe Condition, or Practice, stating that he was working under the influence of two narcotics, in violation of USPS safety policies.  Specifically, Plaintiff wrote:

> I am working in mail processing while under the influence of 2 narcotics and an anti-inflammatory which causes drowsiness.   The safety

> regulations state no one will be in the building while under the influence of a narcotic.  Soma — Vicodin both contain codine [sic] which is an opiate.  I feel that I am a hazard to myself and others while under the influence of this medication, just as some who would take my medication without a prescription would be.  Management is disregarding their [sic] own safety policy and I would like a written response why.

(*Id.*, Ex. 5, at 1.)  Plaintiff alleges that his USPS supervisors tried to have him dismissed from work before the end of his shift that day and that, as he was leaving the nurse's office to return to his station, one of those supervisors, Mable Shepherd, stated, "Don't worry.  We'll get him, he has a paper trail that we're following."  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. A (De La Garza Aff.), at 7 ¶ 16.)  Another supervisor then allegedly said, "He is just playing games."  (*See id.*)  According to Plaintiff, Shepherd then asked, "What kind of games are you playing?"  (*See id.*)  Plaintiff claims that he responded, "I don't play games, especially with safety."  (*See id.*)

The next day, May 23, 2003, Plaintiff reported to work and was instructed to go home and wait to be contacted.  (*See id.*)  On or about June 13, 2003, Plaintiff received a letter informing him that he would be subjected to disciplinary action and placed off duty. Plaintiff claims that the USPS's actions against him were the products of a long campaign of harassment undertaken in retaliation for Plaintiff's filing multiple Equal Employment Opportunity (EEO) complaints throughout the course of his USPS employment – in 1997 (one complaint); 2000 (two complaints); 2001 (one complaint); 2002 (one complaint); and 2003 (one complaint).  (*See id.*, Ex. A, at 1-2 ¶ 3; 4-5 ¶¶ 10b-g; 8-9 ¶¶ 20-21; Def.'s Mem. in Support of Mot. for Summ. J. at 21-22.)

In 2004, Plaintiff filed a complaint of discrimination with the USPS Equal Employment Opportunity Commission (EEOC).  On March 9, 2004, Plaintiff received a right-to-sue letter.  (*See* Pl.'s 1st Am. Compl., Ex. A.)  Plaintiff then filed the instant case,

alleging discrimination on the basis of race, gender, and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-16(a); and retaliation for filing an EEOC complaint. Defendant now moves for summary judgment, arguing that (1) Plaintiff has not properly pled his disability discrimination claim; (2) Plaintiff has not established a *prima facie* case of race, gender, disability, or reprisal discrimination; and (3) Plaintiff cannot demonstrate that Defendant's articulated non-discriminatory reasons for its actions are pretextual.

## II.    ANALYSIS

### A.    Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.   *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted).   A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*

**B.      The Disability Discrimination Claim**

Plaintiff brings his disability discrimination claim only under Title VII and the Civil Rights Act of 1991; he does not cite either the Americans with Disabilities Act (ADA) or the Rehabilitation Act.  As Defendant points out, Title VII does not create a cause of action or provide a remedy for disability discrimination.  *See, e.g.*, *Flowers v. S. Regional Physician Servs. Inc.*, 247 F.3d 229, 233-35 (5th Cir. 2001) (comparing Title VII and the ADA).  Nor does the Civil Rights Act of 1991 support such a claim.  *See* 42 U.S.C. § 2000e-16(1) ("All personnel actions affecting employees or applicants for employment . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.").  Accordingly, Plaintiff's disability discrimination claim is **DISMISSED WITHOUT PREJUDICE**.[1]

**C.      The Race and Gender Discrimination Claims**

**1.      Legal standard.**

This Court evaluates claims of race and gender discrimination using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The *McDonnell Douglas* standard requires a plaintiff to carry the initial burden of establishing a *prima facie* case of discrimination.  *Id.* at 802.  A plaintiff makes a *prima facie* case by showing that: (1) he belongs to a protected group; (2) he was qualified for the position that he sought or held; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably.  *Id.*  In this Circuit, similarly situated employees are those

---

[1] Defendant also argues that Plaintiff's disability discrimination claim is precluded by Judge Harmon's July 15, 2004 Order in *Delagarza v. USPS*, No. H-02-4974, which stated that Plaintiff was not, as a matter of law, disabled as of November 1997.  Because Plaintiff has not properly pled his disability discrimination claim in this case, the Court does not reach the collateral estoppel issue.

who work under "nearly identical circumstances" to those of the plaintiff.  *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (internal quotation marks omitted); *see also Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory rationale for the adverse employment action.  *Id.*

> The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.  To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant.  If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981) (internal citations omitted).

Once the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must demonstrate that the employer's rationale is a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804-05.  While the burden of *production* thus shifts back and forth, under *McDonnell Douglas*, "[t]he ultimate burden of *persuading* the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253 (emphasis added).

### 2.    Plaintiff's *prima facie* case.

Plaintiff's claims of race and gender discrimination must fail because Plaintiff cannot establish the fourth element of the *prima facie* case – namely, that similarly

situated individuals outside of the protected class were treated more favorably than he was.  Plaintiff argues that he has borne this burden by alleging that African-American and female employees who took narcotic medications were not subjected to the adverse actions taken against Plaintiff.   As Defendant notes, however, Plaintiff's conclusory statements that "[e]veryone in [Plaintiff's work] location takes one form of medication or another," that "Maxine Bocard, a black female, was not escorted out of the building for taking medication," and that "[n]one of the black employees, or female employees, in my unit were escorted out of the building for taking medications" (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7) are insufficient to establish that the employees described were similarly situated to Plaintiff.

First, Plaintiff has put forward no evidence that any specific employee was under the influence of narcotic medication while on duty at Plaintiff's work location.  He has not even expressly alleged that a named employee ever took such medication.  Second, Plaintiff has not established that any other employee self-reported being a danger to himself and others, as Plaintiff did.  (*See* Def.'s Brief in Support of Mot. for Summ. J., Ex. 18 (EEO Investigative Affidavit), at 5 ("I was . . . taken off the clock because I brought to the attention of management via form 1767 that mail processing was an unsafe place to work while under the influence of a narcotic.").)  Because, therefore, Plaintiff cannot establish disparate treatment, he has not established a *prima facie* case of race or gender discrimination.

### 3.    Defendant's legitimate, non-discriminatory rationale.

Even if Plaintiff had stated a *prima facie* case, Defendant has articulated a legitimate, non-discriminatory reason for removing Plaintiff from his job: Plaintiff

reported himself to be a danger to himself and others, due to the effects of the narcotic medication that he was taking.  This rationale, if believed by the trier of fact, would suffice to support judgment in favor of Defendant.  The burden of production, therefore, shifts back to Plaintiff to demonstrate that the proffered reason is actually a mere pretext for discrimination.  Plaintiff has failed to do so.  Indeed, Plaintiff concedes that he was removed from his job at least in part "because . . . mail processing was an unsafe place to work while under the influence of a narcotic."  (*Id.*)

The only evidence that Plaintiff offers in support of his claim of pretext is a 2000 memorandum written by an unknown author, stating that Plaintiff should have been fired years earlier.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. D, at 1.)  As Defendant notes, however, Plaintiff's claim is not a wrongful termination claim, for the simple reason that Plaintiff was never terminated from his employment with the USPS; he resigned.  Moreover, Plaintiff has failed to establish any connection between the memorandum and the events giving ruse to his suit, which took place nearly three years after the memorandum was written.  Plaintiff's race and gender discrimination claims are, therefore, defeated by Defendant's asserted and unrebutted reason for its adverse employment action, and Plaintiff's motion for summary judgment on those claims is, accordingly, **GRANTED**.  Plaintiff's race and gender discrimination claims are hereby **DISMISSED WITH PREJUDICE**.

### D.   The Reprisal Discrimination Claim

#### 1.   Legal standard.

To establish a claim of reprisal discrimination, an employee must establish that: "(1) the employee engaged in activity protected by Title VII; (2) the employer took

adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000).   "A 'causal link' is established when the evidence demonstrates that 'the employer's decision [to take the adverse action] was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998)).   The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).   The mere fact, however, that the adverse action is taken after the employee engages in protected activity "will not *always* be enough for a *prima facie* case."   *Id.* (emphasis in original). Moreover, "once the employer offers a legitimate, non-discriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."   *Id.*

### 2.     Plaintiff's *prima facie* case.

In his EEO complaint alleging reprisal discrimination, Plaintiff cited six previous EEO complaints as the reason for the USPS's purported discrimination against him.   The Fifth Circuit has held that an adverse employment action taken a little more than two months after an employee engaged in a protected activity was enough to establish a causal link for summary judgment purposes.   *See Medina*, 238 F.3d at 684.   It has also held, however, that an employee did not establish a causal link by showing that the

adverse action occurred only ten days after the protected activity.  *See Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 338-39 (5th Cir. 1999).

It appears, therefore, that the standard for extrapolating a causal link from temporal proximity is, at the very least, flexible.  Common sense, however, dictates that a lapse of one year or more between the protected activity and the adverse employment action cannot give rise to a presumption of causality.   Thus, Plaintiff's reprisal discrimination claim fails insofar as it is based upon his EEO complaints in 1997, 2000, 2001, and 2002.  Plaintiff's 2003 complaint, however, predated his last day of work by only a little more than three months.  This evidence of temporal proximity might, under Fifth Circuit precedent, be enough to establish a *prima facie* case.  Even if so, however, Plaintiff's claim fails, because Defendant has advanced a legitimate, non-discriminatory reason for its action.

### 3.    Defendant's legitimate, non-discriminatory rationale.

As it did with respect Plaintiff's race and gender discrimination claims, Defendant responds to Plaintiff's reprisal discrimination claim by pointing to Plaintiff's self-report that he was a danger to himself and others.  As noted above, Plaintiff has offered no evidence to rebut the legitimacy of this rationale.   In addition, the temporal proximity between Plaintiff's self-report and the adverse action is much greater than that between Plaintiff's 2003 EEO complaint and his last day of work.  Plaintiff reprisal discrimination claim cannot, therefore, survive beyond the summary judgment stage.   Accordingly, Defendant's motion for summary judgment on that claim is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

### E.        The Harassment Claim

Finally, Plaintiff appears to be asserting a claim for discriminatory harassment throughout his last five years of employment with the USPS.  (Pl.'s 1st Am. Compl. at 3-4; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3; *id.*, Ex. A, at 4, 8.)  Any such claim is, however, time-barred.  *See* 29 C.F.R. § 1614.105(a)(1) (stating that an aggrieved person must contact an EEOC counselor within 45 days of the incident of discrimination, as a prerequisite to filing an EEOC complaint).  Plaintiff has shown no reason for the Court to apply the doctrine of equitable tolling, which is, in any event, rarely available in this context.  *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (holding that a Title VII plaintiff's lack of knowledge of applicable filing deadlines, unfamiliarity with the legal process, lack of representation, and illiteracy do not warrant equitable tolling).  Plaintiff's harassment claim, if he has in fact stated one, is therefore **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

Plaintiff's race, gender, and reprisal discrimination claims are hereby **DISMISSED WITH PREJUDICE**.  Plaintiff's disability discrimination and harassment claims are **DISMISSED WITHOUT PREJUDICE**.[2]

---

[2] Defendant also challenges Plaintiff's demand for punitive damages.  (Def.'s Mot. for Summ. J. at 29.) Because the Court finds that all of Plaintiff's claims should be dismissed, it declines to reach the damages issue.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 13th day of February, 2006.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**